[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON MOTION OF DEFENDANT BARRY SCHUSS TO SET ASIDE VERDICT AND FOR JUDGMENT
This is a motion to set aside a verdict in favor of plaintiffs American National Fire Insurance Company, and Young Israel of West Hartford and against defendant Barry Schuss. On August 21, 1990, a jury returned a verdict finding that defendant Schuss negligently caused damages to plaintiff American National's insured, Young Israel of West Hartford, after he intentionally set several fires in the Synagogue of Young Israel. On August 24, 1990, pursuant to Practice Book Sec. 320, defendant Schuss moved the court to set aside the verdict and to render judgment in his favor on the grounds that it is contrary to law and contrary to the evidence.
The plaintiffs alleged in their complaint that the fire on the premises of Young Israel of West Hartford, "and the resulting damages were caused by the carelessness and negligence of the defendant [Barry Shuss] in that he, in one or more of the following ways:
a. Ignited a fire, which he knew or should have known, could spread and damage or destroy the Young Israel building and its contents;
b. Failed to take action to contain or extinguish the fire;
c. Failed to alert or notify anyone of the existence of the fire and the necessity to extinguish it; and
d. Failed to warn anyone that a fire had been ignited."
Inasmuch as there were no interrogatories submitted to the jury, this court must find that the jury found the defendant negligent under any (one or all) of the plaintiffs' claims of negligence in accordance with the general verdict rule. Royal Homes, Inc. v. Dalene Hardwood Flooring Co., 151 Conn. 465,466 91964), Giardini v. Supermarkets General Corp.,24 Conn. App. 9, 11 (1991). CT Page 1455
Applicable Law To Court's Power To Set Aside A Jury Verdict
"The trial court possesses inherent power to set aside a jury verdict which, in the court's opinion, is against the law or the evidence." Palomba v. Gray, 208 Conn. 21, 23 (1988). In Palomba, the Supreme Court stated,
 The decision to set aside a verdict entails the exercise of a broad legal discretion that, in the absence of clear abuse, we shall not disturb. (citation omitted). Our review of the trial court's action on a motion to set aside the verdict involves a determination of whether the trial court abused its discretion, according great weight to the action of the trial court and indulging every reasonable presumption in favor of its correctness.
Id., at 24.
The Palomba court further stated,
 Litigants, however, have a constitutional right to have issues of fact determined by a jury. (citations omitted). "The right to a jury trial is fundamental in our judicial system, and this court has said that the right is one obviously immovable limitation on the legal discretion of the court to set aside a verdict, since the constitutional right of trial by jury includes the right to have issues of fact as to which there is room for a reasonable difference of opinion among fair-minded men passed upon by the jury and not by the court."
Id., at 25.
The court noted, however, that although a trial court should not set aside a verdict where it is apparent that there was some evidence upon which a jury might reasonably reach their conclusion, the court should not refuse to set it aside where "the manifest in justice of the verdict is so plain and palpable as clearly to denote that some mistake was made by the jury in the application of legal principles, or as to justify the suspicion that they, or some of them, were influenced by prejudice, corruption or partiality." (Citations omitted). CT Page 1456 Id., at 24. The court further noted that this is so even if "the evidence was conflicting and there was direct evidence in favor of the party who prevailed with the jury." Id., at 24.
This pronouncement is a restatement of the common law of this state which was so stated in Roma v. Thames River Specialties Co., 90 Conn. 18, 21 (1915). In that case our Supreme Court said:
 The injustice of the verdict was so manifest that it was apparent that it was dictated by some improper influence, very likely sympathy for the plaintiff and not by a weighing of the evidence.
Issue
This court must determine, therefore, whether the evidence presented by the plaintiffs contains anything from which the jury could have reasonably concluded that the damages sustained by Young Israel Synagogue were caused by the alleged negligent acts of Barry Schuss.
 Recovery of damages in negligence requires proof by a fair preponderance of the evidence that the [defendant] owed a duty of care to the [plaintiff], which was breached by the [defendant's] failure to meet the standard of care arising therefrom and that the breach was the proximate cause of actual harm suffered by the [plaintiff].
Coburn v. Lenox Homes, Inc., 186 Conn. 370, 372 (1982).
Evidence Presented By The Plaintiffs
The plaintiffs never presented any evidence to demonstrate that the lighting of the several fires by Schuss were other than intentional acts, i.e., that the lightings were inadvertent or were done for the purpose of burning trash, or for comfort or other good reason. The plaintiffs do not claim otherwise.
The evidence clearly establishes that the defendant admitted in a statement to the police that he intended to and did set several fires in different locations in the synogogue building. One of these fires was in the main sanctuary and was started by lighting the curtains over the ark.
The police investigation revealed that these fires were all of an incendiary nature or a deliberate burning of the property. (See Webster's New Collegiate Dictionary). CT Page 1457
Schuss also testified that when he lit the curtains he did not specifically intend to damage the holy Torah scrolls (T. 33, 37). He further established that he did not tell anyone that he lit the fires nor did he call the authorities or take continue. (T. 42).
The building and its contents were severally damaged in the stipulated amount of $167,877.07.
Law
I. Negligence Versus Intent
Although it is permissible for the jury to disregard the defendant's claim that all of these acts were intentional, this court must find reasonable cause on the jury's part to find that, in fact, these acts by Schuss were negligent, and the proximate cause of the damages suffered by the plaintiffs. Novak v. Anderson, 178 Conn. 506, 508 (1979).
The concept of intent and its relationship to intentional acts has been thoroughly analyzed by our Supreme Court, the courts of other states and the treatise writers.
In Mingachos v. CBS, Inc., 196 Conn. 91, 103, (1985), our Supreme Court recognized that in certain situations there may be a fine line differentiating the two. That line is drawn "at the point where the known danger ceases to be a forseeable risk which a reasonable man would avoid, and becomes a substantial certainty."
Explaining further, the court in Mingachos said,
 Intent is the word commonly used to describe the desire to bring about the physical consequences (of an act) . . . Intent, however, is broader than a desire to bring about physical results. It must extend not only to those consequences which are desired, but also to those which the actor believes are substantially certain to follow from what he does." Id., 101.
 Intent refers to the consequences of the act rather than the act itself. Id.
 The characteristic element (of intent) is the desire to injure, either actively entertained, or to be implied from the conduct and circumstances. CT Page 1458 Id., at 102.
See, also, 1 Restatement (Second), Torts Section 8A (1965) and also, comment b.
The plaintiffs' claim is that inasmuch as Schuss didn't specifically intend to damage certain portions of the building, i.e., the ark, that these acts could have been found to be negligent as well as his acts in failing to summon help or to do something to put out the fire, or to warn of the fire.
On this point, an analysis of similar cases is helpful. Several insurance cases involving the question of assault versus negligence in conjunction with policy exclusions for intentional acts have held that if the injury results from the natural and probable consequences of the intentional act, the subjective intent of the actor is simply immaterial. Steinmetz v. National American Insurance Company, 121 Ariz. 268, 589 P.2d 911
(Arizona Ap. 1978). See, also, Wear, et al vs. Farmers Insurance company of Washington, et al., 49 Wash. App. 655, 745, P.2d 526 (1987).
Similarly, the colorado Court of Appeals held that if the criminal acts with the intent or expectation that bodily injury will result even though the bodily injury that does result is different either in character or magnitude from the injury that was intended, the conduct is intentional. Butler v. Behaeghe,37 Colo. 282, 548 P.2d 934 (1976).
The Supreme Court of Nebraska, in recognizing this principle, opined that "a defendant may assert the rock was accidentally released or was not aimed at the victim, but he will not be heard to say he intended to throw the rock softly. (Citation omitted). . . . Any reasonable analysis requires the been intended." Jones v. Norval, 203 Neb. 549, 279 N.W.2d 388, (1979).
The Connecticut Supreme Court in assault cases has analyzed intent. Where a defendant threw a stone at someone other than the one struck by it, the action was a compensable battery because under our doctrine of "transferred intent" where one intends merely an assault, if bodily injury results to one other than the person whom the action intended to put in apprehension of bodily harm, it is battery actionable by the injured person. Alteri v. Colasso, 168 Conn. 329, 336 (1975).
Still closer to the factual scenario in this case is Polmatier v. Russ, 206 Conn. 229, 240 (1988). In that assault case, the defendant sought exculpation from liability on the theory that the result was not intended or desired. In rejecting this claim, our Supreme Court unequivocally stated CT Page 1459 (citing the Restatement (Second) Torts 88A and comment b);
 "Intent is not, however, limited to consequences which are desired. If the actor knows that the consequences are certain, or substantially certain, to result from his act, and still goes ahead, he is treated by the law as if he had in fact desired to produce the result."
II. Proximate Cause
In the event that this court can conclude that the jury could reasonably have found negligence in this case to sustain the verdict it must also conclude that the evidence was sufficient to also establish that the defendants negligence was the proximate cause of the plaintiffs' damage.
The law in this state, as in most others, is crystal clear that "in a negligence case, a causal relationship between a defendant's wrongful conduct and a plaintiff's injury must be established in order for the plaintiff to recover damage." Cordona v. Valentin, 160 Conn. 18, 24 (1970).
A more recent case further defined the scope of proximate cause. In that case, our Supreme Court said:
 Although the elements of a cause of action may be established on the basis of inferences drawn from circumstantial evidence, . . . such inferences must be reasonable and logical, and the conclusions based on them must not be the result of speculation and conjecture . . . When an element necessary to a cause of action cannot be established without conjecture, the evidence presented cannot withstand a motion for a directed verdict.
Boehm v. Kish, 201 Conn. 385, 389 (1986).
The requirement of the element of causation is also discussed in Robinson v. Southern New England Telephone Co.,140 Conn. 414 (1953). There the court in upholding the trial court's setting aside a jury verdict, found no reasonable causal relationship between the alleged act of negligence and the damage suffered by the plaintiff. In that case, the plaintiff failed to present any evidence that the defendant's refusal to send the requested fire department and sending instead another late arriving fire department which was unable to save the CT Page 1460 plaintiff's home from destruction; was caused by such failure.
Conclusions
From the evidence presented to the jury in the light most favorable to the defendants this court can find no evidence of negligence whatsoever. In fact, the evidence presented is overwhelming in establishing that every act concerning the starting of the fire was done deliberately and intentionally by this defendant.
The fact that Schuss did not specifically intend to damage particular things is immaterial in light of the law as previously discussed, because intent is implied and included in all of the consequences which are substantially certain to result. Polmatier v. Russ, supra, 240.
Even if this were not the law, the plaintiffs cannot prevail because it is their burden to prove negligence, and they have not offered one shred of evidence that the defendant's acts were negligent.
The plaintiffs must also fail on the second ground of proximate cause because, here again, there was no evidence submitted that on the claimed grounds of negligence (that Schuss intended no specific harm and took no steps to have the fire put out), the plaintiffs suffered damages.
No evidence was offered as to how much damage occurred to the items deliberately set fire to by Schuss and how much occurred to the other items. There was no evidence as to how much damage occurred at the point he could have (or should have) summoned the authorities to put out the fire. All of the negligence claims leave the jury to completely speculate as to the extent of damage which resulted from such negligence. When would the fire trucks have arrived after Schuss summoned them? How much damage would have occurred by that time? Could the building or its contents been saved by that time?
Therefore, this court can only conclude that the jury erred in its application of the law, or in its knowledge or understanding, or perhaps, as is more likely in this case by its partiality or sympathy for the plaintiffs. After all, Schuss had indeed committed outrageous and criminal acts in lighting these terribly destructive fires which the jury, understandably, did not wish to condone. This court, however, cannot endorse such a conclusion.
The plaintiffs have not submitted to the jury evidence of negligence or proximate cause and therefore the verdict in their CT Page 1461 favor cannot stand.
For these reasons, the verdict in favor of the plaintiffs is set aside and judgment may enter in favor of the defendant, Barry Schuss.
FREED, J.