TERRI OLSHEFSKI *v.* JEFFREY R. STENNER ET AL.
(9887)

DALY, FOTI and LAVERY, Js.

Argued October 3—decision released December 10, 1991

*Joseph T. Sweeney,* for the appellants (named defendant et al.).

*Lawrence L. Connelli,* for the appellee (plaintiff).

DALY, J. The named defendant and his defendant corporation[1] appeal from a judgment in favor of the plaintiff for injuries the plaintiff sustained while on the premises of the defendants' tavern. The defendants claim that the trial court incorrectly instructed the jury as to (1) the nature and the scope of the plaintiff's duty to exercise care for her own safety, (2) the definition of proximate causation and (3) the scope of the duty owed to business patrons of the defendants' tavern. We agree with the defendants on their first claim and therefore reverse the judgment.

The jury could reasonably have found the following facts. The plaintiff, accompanied by a friend, was walk-

---

[1] The defendant Rodney Martin, the owner of the dog, did not appeal from the judgment rendered against him. The named defendant, Jeffrey Stenner, and the defendant, P.D.L., Inc., the corporation owned by Stenner that operated the tavern where this incident occurred, are appealing from the judgment. Stenner and P.D.L., Inc., will be referred to as the defendants in this opinion.

ing toward the defendants' tavern in Canton on May 6, 1988, when she encountered a dog tied to a bush. The dog, a pitbull terrier weighing approximately eighty pounds, was near the front of the tavern's premises by a sidewalk leading to the entrance. The dog's owner had tied it to the bush before entering the tavern. On six previous occasions, the owner had tied his dog to that bush while at the tavern. On one other occasion, he brought the dog into the tavern but was told by the management to remove the dog.

As the plaintiff and her friend approached the tavern, the dog was sitting on its hind legs. The friend proceeded to walk in front of the plaintiff and told her to "be careful, the dog does not look too friendly." It is unclear whether the plaintiff even heard this statement. She then approached the dog by bending down and extending her hand toward the dog in an attempt to pet it. It then lunged at the plaintiff and bit her on the nose. The manager of the tavern, who was working the night of the attack, testified that he was unaware of the dog's presence on the tavern's premises but he was aware that the owner had on previous occasions tied his dog to that bush. No employee of the tavern knew of the dog's location on the night of the attack. Stenner was not working at the tavern when the attack occurred. He had no knowledge of this dog's ever having been tied to a bush on the tavern's premises. The jury assessed the relative negligence of the plaintiff to be 0 percent and the defendants, 100 percent. The jury awarded the plaintiff $127,415.54.

The defendants claim that the trial court's jury instructions failed to explain properly and completely the issue of contributory negligence, which is the duty of the plaintiff to exercise reasonable care to avoid harm to herself. The defendants' ninth request to charge asked the court to explain that "with respect to those claims of negligence on the part of the plain-

tiff . . . the law did impose upon her the duty to be watchful of her surroundings and to watch what she was doing and to exercise ordinary care, both to avoid dangers known to her and to discover dangers to which she might expose herself. In connection with that duty, the law conclusively presumes that the plaintiff . . . knew and appreciated any dangers which, under the same or similar circumstances, would have been known or appreciated by an ordinarily prudent person." This request to charge was based on *Sitnik* v. *National Propane Corporation,* 151 Conn. 62, 65, 193 A.2d 503 (1963), and *Farkas* v. *Halliwell,* 136 Conn. 440, 445, 72 A.2d 648 (1950). Defense counsel objected to the court's refusal to give this instruction on the meaning of contributory negligence. The objection was overruled and the defendant took an exception.

The court defined common law negligence "as the doing of something which a reasonably prudent person would not do under the particular circumstances or the omitting to do what a reasonably prudent person would do under the particular circumstances. It is the breach of a legal duty owed by one person to another and such legal duty is the exercise of reasonable care." The court read the following special defense raised by the defendants: "[A]ny injuries, losses or damages, which the plaintiff [Olshefski] may have suffered as a result of the incident alleged in her complaint, were directly and proximately caused by her own hereinafter described negligence which was a substantial factor in producing that accident." It also further listed all the specific special defenses alleged by the defendants. The court then explained the doctrine of comparative negligence to the jury. There was no instruction as to the plaintiff's duty to avoid dangers or the meaning of contributory negligence in this case.

When reviewing the propriety of a trial court's charge to the jury, we must determine " 'whether it

fairly presents the case to the jury in such a way that injustice is not done to either party under the established rules of law.' " *Atlantic Richfield Co.* v. *Canaan Oil Co.,* 202 Conn. 234, 240, 520 A.2d 1008 (1987); *Borsoi* v. *Sparico,* 141 Conn. 366, 371, 106 A.2d 170 (1954). Jury instructions do not have to be " 'exhaustive, perfect or technically accurate' " but they must be " 'correct in law, adapted to the issues and sufficient for the guidance of the jury.' " *Tesler* v. *Johnson,* 23 Conn. App. 536, 538, 583 A.2d 133 (1990), cert. denied, 217 Conn. 806, 584 A.2d 1192 (1991).

The instructions to the jury failed to explain adequately the meaning of contributory negligence, which is still recognized as a limitation on the plaintiff's ability to recover damages under Connecticut's comparative negligence doctrine. See General Statutes § 52-572h (b). The court defined the meaning of only common law negligence. The definition of contributory negligence is distinct from the definition of negligence. *Hoelter* v. *Mohawk Service, Inc.,* 170 Conn. 495, 501, 365 A.2d 1064 (1976). " 'Contributory negligence is conduct which involves an undue risk of harm to the person who sustains it.' " Id., quoting 2 Restatement (Second), Torts § 463, comment b. Negligence involves behavior that results in creating "an undue risk of harm to others." 2 Restatement (Second), supra. The defendants' ninth request to charge correctly explained the meaning of contributory negligence as being different from the concept of common law negligence.

A charge to the jury does not have to incorporate the exact requests by the parties as long as the court correctly states the governing law. *Mei* v. *Alterman Transport Lines, Inc.,* 159 Conn. 307, 311, 268 A.2d 639 (1970). There was evidence from which the jury could conclude that the plaintiff's conduct constituted an undue risk of harm to herself. Thus, the determination of the plaintiff's contributory negligence presented "a

submissible question for the jury" that the court had to explain properly. *Pisel* v. *Stamford Hospital,* 180 Conn. 314, 329, 430 A.2d 1 (1980) The reference to contributory negligence in the charge without a proper explanation of its meaning rendered the charge insufficient to guide the jury's discretion in reaching their verdict. See *Tesler* v. *Johnson,* supra (the charge mentioned proximate cause but did not give a specific definition that would allow the jury to determine if there was adequate proof of causation). The court's failure to instruct the jury as requested on contributory negligence, a material issue, constitutes reversible error. In view of our ruling on this issue, it is unnecessary to consider the defendants' remaining claims.

The judgment is reversed and the case is remanded for a new trial.

In this opinion the other judges concurred.